## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**BESSIE MOORE**,

<em>Plaintiff,</em>

*v.*

**JACKSON PUBLIC SCHOOL
DISTRICT and DR. ERRICK L.
GREENE**, *in his Official Capacity as
Superintendent*,

<em>Defendants.</em>

CAUSE NO. 3:23-CV-3092-CWR-LGI

## ORDER

Before the Court are Defendant Errick L. Greene's *Motion to Dismiss*, Docket No. 6, Defendant Jackson Public School District's ("JPS") *Motion to Dismiss*, Docket No. 8, JPS's *Motion for Summary Judgment*, Docket No. 10, Plaintiff Bessie Moore's *Motion to Amend Complaint*, Docket No. 16, and Ms. Moore's *Motion to Correct Filing Errors*, Docket No. 21.[1]

Upon review, Dr. Greene's *Motion to Dismiss* is granted. JPS's *Motion to Dismiss* is granted in part, denied in part. Ms. Moore's *Motion to Amend Complaint* is denied. JPS's *Motion for Summary Judgment* is denied. And Ms. Moore's *Motion to Correct Filing Errors* is granted.

### I.   Factual and Procedural History

The parties to this action are no strangers to the Court—neither are many of the facts and claims presented. Plaintiff Bessie Moore has been suing Jackson Public School District

---

[1] Ms. Moore's *Motion to Correct Filing Errors* at Docket Nos. 13 and 14, Docket No. 21, is well taken. The Court will contemporaneously consider in its analysis Ms. Moore's *Memorandum in Support* of *her Response in Opposition* to JPS's *Motion to Dismiss* and Ms. Moore's *Memorandum in Support of her Response in Opposition* to JPS's *Motion for Summary Judgment*.

("JPS") and its officials for at least seven years. The instant action, however, arises out of Ms. Moore's alleged wrongful termination on December 15, 2020. Many of the facts Ms. Moore alleges in her complaint were litigated and adjudicated in her prior case. *See Moore v. Jackson Pub. Sch. Dist.*, 3:21-CV-531-CWR-FKB, 2021 WL 5352130 (S.D. Miss. Nov. 16, 2021); No. 3:21-CV-531-CWR-FKB, 2022 WL 3701631 (S.D. Miss. July 25, 2022). As such, the Court will summarize only those facts relevant to Ms. Moore's termination on December 15, 2020, the incident giving rise to the present lawsuit.

On February 28, 2020, Ms. Moore and JPS entered into a one-year employment contract for the 2020-2021 Academic Year. Docket No. 21-1 at 1. The contract was set to begin August 5, 2020 and end May 27, 2021. Prior to that, in May 2020, Ms. Moore filed an internal complaint against the principal of Peeples Middle School for allegedly bullying and harassing her. Docket No. 1 at 7. That complaint resulted in "numerous internal investigations" and findings of no wrongdoing by JPS. Docket No. 1-1 at 6-8.

In response to the alleged conduct Ms. Moore experienced, she filed a Charge of Discrimination with the EEOC on October 20, 2020. Docket No. 1-1 at 8. Thereafter, in response to a complaint Ms. Moore sent to the EEOC, she contends the EEOC sent a letter to JPS's counsel warning "that since [Ms. Moore] complained of discrimination . . . continuing to intimidate and harass her by creating 'increasingly hostile and intolerable working conditions'" creates an inference "that she is being subjected to retaliation." Docket No. 21-7. "Please remind your client," the letter explained, "that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law." *Id*. Ms. Moore claims that weeks after the EEOC sent this letter—

2

which did not include a date[2]—JPS terminated Ms. Moore's employment contract. Docket No. 1-1 at 8. On December 8, 2020, Ms. Moore received an email from JPS informing her of her immediate release from duty, effective December 15, 2020. *Id.* at 4. She waived her right to a hearing following termination. Docket No. 21-12 at 8.

On April 14, 2021, Ms. Moore filed another EEOC Charge of Discrimination, this time claiming she was terminated in retaliation for filing the October 20, 2020 charge. Docket No. 1-1 at 2. On July 27, 2023—two years later—the EEOC conducted a predetermination interview with Ms. Moore regarding her April 14, 2021 charge. Docket No. 10-2. A few minutes after completing the predetermination interview, the EEOC uploaded a Notice of Right to Sue letter to the EEOC portal. *Id.* at 1. The EEOC subsequently emailed Ms. Moore informing her that documents related to her April 14, 2021 charge were available for download via the EEOC portal. Because EEOC's records indicated Ms. Moore did not access the portal, on August 4, 2023, the EEOC sent a reminder email to Ms. Moore informing her that there were documents available for download in the portal. Docket No. 10-3.

Ms. Moore never accessed the EEOC portal or downloaded her Notice of Right to Sue letter. So, on August 17, 2023, the EEOC sent Ms. Moore a letter via U.S. mail explaining that it issued a Notice of Right to Sue letter and sent Ms. Moore "an email notification that EEOC had made a decision" regarding her charge. *Id.* The letter further explained: "Our records indicate you have not downloaded that document from the portal," and then enclosed a copy

---

[2] The undated EEOC letter to JPS's counsel identifies the subject charge as Charge No. 423-2020-01396. Ms. Moore's pleadings lead the Court to believe that the October 20, 2020 EEOC charge is recorded as Charge No. 423-2020-01396. JPS does not dispute this fact in its responsive pleadings. As such, the Court accepts Ms. Moore's well-pleaded fact that Charge No. 423-2020-01396 is the recorded charge number of the October 20, 2020 EEOC charge. Even if this letter is not associated with the October 20, 2020 charge, JPS does not dispute that it received this letter and that it was warned about retaliating against one who exercises her rights.

of the Notice of Right to Sue letter. *Id.* Ms. Moore says she received that letter on August 21, 2023. She filed the instant complaint on November 15, 2023. Docket No. 1 at 8.

Ms. Moore's complaint lodges six claims against Dr. Greene and JPS. Three federal claims: (1) age-based discrimination in violation of the ADEA; (2) sex-based discrimination in violation of Title VII; and (3) retaliation. She further alleges three state law claims: (1) intentional infliction of emotional distress; (2) breach of the covenant of good faith and fair dealing; and (3) breach of contract.

## II.     Legal Standard

The Court must dismiss a cause of action for a party's failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). At this stage, the Court accepts as true all well-pleaded facts and construes the complaint in the light most favorable to the plaintiff. *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). While *pro se* litigants' filings must be liberally construed, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the motion to dismiss." *Palma v. New Orleans City*, 115 F. App'x 191, 193-94 (5th Cir. 2004) (quotations omitted).

"[A] complaint must plead enough facts to state a claim to relief that is plausible on its face." *Foto v. Standard Ins.*, No. 1:13-CV-341-LG-JCG, 2014 WL 4472769, at *1 (S.D. Miss. Sept. 10, 2014). When a district court considers documents and matters outside the pleadings, the court must convert a *motion to dismiss* into a *motion for summary judgment. Id.* If, however, the documents or matters are referenced in the complaint, the court may consider those materials without converting a *motion to dismiss* to a *motion for summary judgment. Id.*

III.   **Discussion**

A.  **Dr. Greene's** *Motion to Dismiss***.**

Ms. Moore's claims against Dr. Greene are disposed easily.  "Individuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003). The same is true for claims brought under the ADEA. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001). For that reason, and as this Court previously held, Ms. Moore cannot hold Dr. Greene liable in his official capacity. *See* 3:21-CV-531-CWR-FKB, 2021 WL 5352130 (S.D. Miss. Nov. 16, 2021).

Dr. Greene's *Motion to Dismiss* is, therefore, granted.

B.  **JPS's** *Motion to Dismiss* **Ms. Moore's sex and age discrimination claims.**

1.  **The doctrines of collateral estoppel and res judicata.**

JPS's *Motion to Dismiss* argues that the doctrine of collateral estoppel bars Ms. Moore from relitigating allegations concerning events that occurred in 2017, 2018, 2019, and 2020. Docket No. 9 at 8. Collateral estoppel "prevents the same parties or their privities from relitigating issues that were litigated and decided in a prior action." *Bradberry v. Jefferson Cnty. Tex.*, 732 F.3d 540, 548 (5th Cir. 2013). Res judicata, a related doctrine, "applies to legal claims, instead of issues, and bars a suit from being brought again on an event that was the subject of a previous legal cause of action, fully and finally litigated." *Id.* at 555 n.6.

The events giving rise to Ms. Moore's present age and sex-based discrimination claims, which arose out of the same alleged incidents between Spring 2020 to at least October 2020, were the subject of a previous suit. *See* No. 3:21-CV-531-CWR-FKB, 2022 WL 3701631

(S.D. Miss. July 25, 2022).[3] Those legal claims are identical to the claims presently before the Court and they were adjudicated in 2022. For that reason, the Court finds that the doctrine of res judicata, not collateral estoppel, is applicable here.

### 2.   Ms. Moore's sex and age discrimination claims are barred under res judicata.

The doctrine of res judicata "bars the litigation of claims that were previously litigated or could have been raised in an earlier suit." *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014); *see also Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560 (5th Cir. 1983) ("all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication" are barred).

The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Murry*, 553 F. App'x at 364.

Again, neither Ms. Moore nor the facts and (most of) the claims she presents here are new to this Court. The Court dismissed her sex and age discrimination claims against JPS in 2022.[4] Comparing the previous suits to today's case reveals the four elements of res judicata are satisfied.

First, JPS is the same Defendant Ms. Moore sued in her previously dismissed action. Second, the Court that issued final judgment—this Court—is a court of competent jurisdiction. Third, Ms. Moore's prior action was dismissed on its merits. In 2022, the Court

---

[3] Ms. Moore appealed the decision in 2022 WL 3701631, and the Fifth Circuit affirmed this Court's decision. *See* No. 22-60471, 2023 WL 2658848 (5th Cir. Mar. 28, 2023).
[4] No. 3:21-CV-531-CWR-FKB, 2022 WL 3701631 (S.D. Miss. July 25, 2022).

dismissed Ms. Moore's sex and age-based discrimination claims against JPS for her failure to state a claim under Rule 12(b)(6). 2022 WL 3701631, at *4-5. Fourth, Ms. Moore asserted the same claims of sex and age discrimination under Title VII and the ADEA in 2022 WL 3701631 (Cause No. 3:21-CV-531-CWR-FKB) as she does here. The facts relevant to those claims arose out of the same nucleus of operative facts before the Court. *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Ms. Moore is precluded from "relitigating [the] issues that were or could have been raised" in her prior action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

The sex and age discrimination claims against JPS are, therefore, dismissed.

**C. JPS's *Motion to Dismiss* Ms. Moore's claim of retaliation under Rule 12(b)(6).**

The remaining federal claim shall proceed as Ms. Moore sufficiently states a claim of retaliation. The parties' briefing on this issue is a bit scattered, so the Court will take a moment to clarify the issues.

**1. Scope of the issues.**

First, Ms. Moore's *Motion to Correct Filing Errors at Docket Nos. 13 and 14* is well taken. *See* Docket No. 21; *supra* note 1. Ms. Moore mistakenly omitted the *Memorandum in Support* of her *Response in Opposition* to JPS's *Motion to Dismiss*. Her *Motion* sought leave to file that *Memorandum* to supplement the *Response* she filed at Docket No. 13. The Court is "mindful of [plaintiff's] status as a *pro se* litigant" and recognizes that she may have inadvertently omitted supporting documentation in her filing. *See Cain v. Cain*, No. Civ. A. 05-0814-M, 2005 WL 2758071, at *4 (W.D. La. Oct. 25, 2005) (allowing petitioner a second opportunity to file the correct writ application because "[p]etitioner may have inadvertently submitted the wrong document"); *see also Santana v. Aaron's, Inc.*, No. 1:19-V-241-HSO-JCG, 2020 WL 12968367, at *2 (S.D. Miss. Dec. 10, 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) ("Filings by pro

se litigants are to be liberally construed."). Thus, the Court will grant the *Motion to Correct Filing Errors* and consider Ms. Moore's *Memorandum* in its review of JPS's *Motion to Dismiss*.

Second, the Court will not consider events that occurred in 2017 or 2018 in its analysis. Ms. Moore contends that JPS retaliated against her because she filed EEOC charges in 2017, 2018, and 2020. Docket No. 1 at 6, 1-1 at 8. JPS is correct that Ms. Moore's 2017 and 2018 EEOC charges are too remote to state a claim of retaliation for her termination in December 2020. *See Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433-34 (5th Cir. 2021) (finding a "two-year lapse is indeed too remote to permit a reasonable inference of causation"). Even more, "[a] Title VII suit may extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 369 (5th Cir. 2017). The Court limits its analysis to the events giving rise to Ms. Moore's April 14, 2021 charge. *See Watkins v. Tex. Dep't of Crim. Just.*, 269 F. A'ppx 457, 461 (5th Cir. 2008) (finding that actions predating a plaintiff's participation in a protected activity cannot be retaliatory).

Finally, JPS bemoans that Ms. Moore's complaint does not clearly state whether her retaliation claim arises under Title VII or the ADEA. Docket No. 9 at 16. Nevertheless, the "elements of retaliation in an ADEA case are the same as those under Title VII." *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. A'ppx 38, 44 (5th Cir. 2011). As such, the Court will apply the prima facie elements for stating a Title VII retaliation claim.

### 2. Elements to state claim of retaliation.

To state a claim of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered a materially adverse employment action; and (3) a causal connection

exists between the protected activity and materially adverse employment action. *See Cabral v. Brennan*, 853 F.3d 763. 766-67 (5th Cir. 2017).

Ms. Moore contends that she was retaliated against because she filed, among other things, EEOC charges against JPS. Docket No. 1 at 6-7. In October 2020, Ms. Moore filed an EEOC Charge of Discrimination. Docket No. 1-1 at 8. Title VII "prohibits employers from retaliating against an employee who . . . files a charge raising her employer's discrimination on the basis of race, color, sex, or national origin." *Davis v. Tex. Health and Hum. Servs.*, 761 F. A'ppx 451, 455 (5th Cir. 2019). JPS argues that Ms. Moore's filing of the October 2020 charge was not a protected activity because that charge did not "protest[] activity made unlawful under the statute—discrimination based on race, religion, national origin, color, sex or age." Docket No. 9 at 17. As JPS understands it, "[i]f a complaint does not complain of discrimination based on one of the protected classifications, it does not constitute protected activity." *Id.* JPS argues Ms. Moore's October 2020 charge did "not complain of discrimination based on one of the protected classifications," and thus "it does not constitute protected activity." *Id.*

Because the October 2020 charge was not attached to the pleadings, the Court cannot say whether or not Ms. Moore alleged discrimination based on a protected classification under Title VII or the ADEA. Similarly, her complaint does not expressly say she filed the October 2020 charge for discrimination based on a protected classification. Nevertheless, contrary to JPS' assertion, her charge did not have to allege a specific form of discrimination to constitute a protected activity.

First, the Fifth Circuit only requires an employee to have "made a charge" under Title VII to demonstrate that she engaged in a protected activity. *See Byers v. Dall. Morning News,*

*Inc.*, 209 F.3d 419, 428 (5th Cir. 2000). Second, the requirement that an employee must show that she "opposed any practice made an unlawful employment practice" by Title VII—which is not relevant here—does not require her to prove that the practices were *actually unlawful*. *Id.* She only has to prove that she had "a reasonable [sic] belief that the employer was engaged in unlawful employment practices." *Id.* Ms. Moore states that "JPS became relentlessly aggressive" after she filed her October 2020 EEOC charge by attacking her work performance, spreading false information, and ultimately terminating her. Docket No. 1-1 at 8. She, thus, alleges a reasonable belief that she was unlawfully fired for filing the October 20 EEOC charge. Furthermore, filing an EEOC charge, alone, is enough to satisfy the "protected activity" prong. Ms. Moore, therefore, sufficiently pled a protected activity.

Second, Ms. Moore's termination constitutes a materially adverse employment action. The risk of being fired "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Therefore, the first two elements required to state a claim of retaliation are met.

Third, Ms. Moore has sufficiently pled a causal connection between her filing the October 2020 EEOC charge and her termination on December 15, 2020. Because JPS believes Ms. Moore did not engage in a protected activity, it chose not to brief the third element necessary to disprove a claim of retaliation. Instead, JPS raises two arguments: (1) Ms. Moore's retaliation claim is untimely and, (2) Ms. Moore only states "conclusory and subjective statements that she was retaliated against" and that "there are no facts asserted that connect her termination to improper motive." Docket No 9 at 19.

JPS's timeliness argument does not stand to reason. Misapplying *Everett v. Central Mississippi, Inc., Head Start Program*, JPS argues that a "plaintiff is required to set forth the

cognizable protected activity in which she engaged within the 180 days prior to the filing of the EEOC charge." Docket No. 9 at 19; *see also* 444 F. A'ppx 38, 44-45 (5th Cir. 2011). That is a misstatement of the law. "Title VII requires an individual to file a charge within 180 days after *the alleged unlawful employment practice occurred*," not within 180 days after the plaintiff participated in a protected activity. *Everett*, 444 F. A'ppx at 44. Here, Ms. Moore engaged in a protected activity when she filed an EEOC charge against JPS on October 20, 2020. The alleged unlawful termination occurred on December 15, 2020.[5] Within 180 days of her termination, Ms. Moore filed another EEOC charge on April 14, 2021. Docket No. 1-1 at 2. There, she claims JPS fired her on December 15, 2020 because she filed an EEOC charge on October 20, 2020. Two years later, the EEOC issued Ms. Moore a right-to-sue letter to file the present lawsuit based on her April 14, 2021 charge. Ms. Moore's retaliation claim is timely.

JPS's argument that Ms. Moore's pleadings are conclusory and fail to connect her termination to an improper motive also falls flat. Rule 12(b)(6) does not require Ms. Moore to allege an improper motive to state a claim—that is required at summary judgment.[6] Rather, at this stage, Ms. Moore need only "plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese*, 924 F.3d at 768.

To plausibly allege a causal link between the protected activity and the materially adverse employment action, a plaintiff "must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Moreover, "[c]lose timing between an employee's

---

[5] JPS notified Ms. Moore of her impending termination on December 8, 2020. That termination became effective on December 15, 2020. Docket No. 1-1 at 4.
[6] JPS also filed a *Motion for Summary Judgment*. Docket No. 10. There, JPS only argues that Ms. Moore's suit, filed on November 15, 2023, was untimely. The Court addresses JPS's *Summary Judgment* argument below. *Infra* III(D).

protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Richardson v. Prairie Opportunity, Inc.*, 479 F. A'ppx 282, 286 (5th Cir. 2012).

Ms. Moore has shown that her termination was based in part on JPS's knowledge of her filing the October 20, 2020 EEOC charge. In a declaration attached to her complaint, she states that weeks prior to her termination, the EEOC submitted a letter to JPS warning them that continuing to act aggressively towards Ms. Moore could give an inference of retaliation. Docket No. 1-1 at 8. Ms. Moore subsequently attached a copy of that letter to her corrected *Response in Opposition. See* Docket No. 21-7. Furthermore, JPS was aware that Ms. Moore filed an EEOC charge. Docket No. 9 at 20 n.9 (stating "Plaintiff did file an EEOC charge in October 2020").

That Ms. Moore was fired less than two-months after she filed the October 2020 charge supports a causal connection between her filing the charge and subsequently being terminated. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948-49 (5th Cir. 2015) (stating "this court has accepted a two-and-a-half month gap as sufficiently close" in time to establish causation), *overruled on other grounds; Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) ("[T]he close timing between her protected activity and the denial of a raise—about two months—is sufficient to show causal connection for purposes of a prima facie case."); *Hypolite v. City of Hous.*, 493 F. A'ppx 597, 606 (5th Cir. 2012) (finding that a suspension occurring about two months after plaintiff filed his lawsuit was "within the time frame necessary to establish a causal link"). In fact, "a time lapse of up to *four months*" is sufficient to establish a causal connection. *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001).

Ms. Moore has sufficiently pled a claim of retaliation. JPS's *Motion to Dismiss* Ms. Moore's retaliation claim is, therefore, denied.

**D.  JPS's *Motion to Dismiss* Ms. Moore's state law claims.**

Ms. Moore's complaint alleges three state law claims. For reasons explained below, Ms. Moore's claim of breach of the implied covenant of good faith and fair dealing is dismissed. Ms. Moore, however, sufficiently pled a breach of contract claim under Rule 12(b)(6).

### 1.   Intentional Infliction of Emotional Distress.

Ms. Moore claims that "Defendants intentionally engaged in reckless conduct to intentionally result in undue suffering and emotional distress to Plaintiff." Docket No. 1 at 10. She further alleged the principal at Peeples Middle School snatched a document out of her hands, bullied her, harassed her, did not give her access to training materials, excluded her from group emails, and spread negative information about her to coworkers. Docket No. 1-1. She further states that she has suffered emotional and mental anguish. Docket No. 1 at 8. JPS conducted "numerous internal investigations" into her complaints and "concluded no wrongdoing." Docket No. 1-1 at 6-8. Ms. Moore asks for $200,000 in damages for the "pain and suffering caused by deliberate physical, verbal, and emotional abuse." *Id.* at 11.

JPS does not address Ms. Moore's IIED claim in its *Motion to Dismiss,* and so that claim survives JPS's *Motion to Dismiss.*

### 2.   Breach of Implied Covenant of Good Faith and Fair Dealing.

JPS argues, and the Court agrees, that Ms. Moore's breach of the implied covenant of good faith and fair dealing claim should be dismissed because Ms. Moore failed to comply with the Mississippi Tort Claims Act's ("MTCA") notice requirement. *See* Docket No. 9 at 3-

4. The MTCA applies to this claim and required Ms. Moore to file a notice of claim with JPS of her impending lawsuit 90-days before filing suit. *See* Miss. Code § 11-46-11(1); *see also Jones v. Miss. Inst. Higher Learning*, 264 So.3d 9, 24 (Miss. Ct. App. 2018) ("The Supreme Court has now held that [the MTCA applies] to claims alleging 'breach of [an] implied term or condition of any . . . contract.'"). Ms. Moore did not file a notice in conformity with what the MCTA requires. *See* § 11-46-11(1)(b)(iii) (setting forth what a notice must contain).

Therefore, the claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

### 3. Breach of Contract.

JPS argues that Ms. Moore fails to state a claim of breach of contract upon which relief may be granted. Docket No. 9 at 4. It correctly notes that Ms. Moore "identifies the relevant contract as entered on March 4, 2019, to commence on August 2, 2019, and conclude per its own terms on May 26, 2020." *Id.* Thus, "[t]he contract Plaintiff alleges was breached expired by its own terms long before she was terminated." *Id.*

In her *Response in Opposition*, however, Ms. Moore clarifies that the relevant contract is the one that she signed on February 28, 2020 to start August 5, 2020 and end May 27, 2021. Docket No. 21-1 at 5.[7] She included the correct contract as an exhibit to her *Response in Opposition*. "[A] pro se complaint, no matter how inartfully pleaded, must be held to less

---

[7] Ms. Moore attached the incorrect contract and addendum to her complaint, and subsequently clarified and attached the correct documents to her *Response in Opposition*, as corrected through her *Motion to Correct Filing Errors*. Docket No. 21. The only difference between the contract attached to her complaint and that attached to the *Response in Opposition* is the date of the employment period and the date the contract was executed. There are no other substantive differences between the documents. Furthermore, because Ms. Moore referenced the employment contract and addendum in her complaint, the Court may review that which is attached to her *Response in Opposition* without converting the present *Motion to Dismiss* to a *Motion for Summary Judgment. See Foto*, 2014 WL 4472769, at *1. Moreover, clearly JPS knows that the alleged breach of contract claim is about the Moore's last contract with JPS. *See supra*, at 2.

stringent standards than formal pleadings drafted by lawyers." *Santana*, 2020 WL 12968367, at *2. The Court accepts Ms. Moore's clarification and moves forward in its analysis.

To state a claim for breach of contract, Ms. Moore must show that (1) a valid and binding contract exists; and (2) JPS has broken or breached that contract without regard to the remedy sought or the actual damage sustained. *Norman v. Anderson Reg'l Med. Ctr.*, 262 So.3d 520, 527 (Miss. 2019). A material breach occurs when a party fails "to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats the purpose of the contract." *Sanders v. Leake Cnty. Sch. Dist.*, 546 F. Supp. 2d 351, 363 (S.D. Miss. 2008) (internal quotations omitted).

Ms. Moore sufficiently pled a breach of contract claim.

First, a binding contract existed between JPS and Ms. Moore. In her *Response in Opposition*, Ms. Moore identifies and attaches the correct contract for the 2020-2021 Academic Year. Docket No. 21-1. The employment period was designated to begin August 5, 2020 and end May 27, 2021. Both parties signed the contract and addendum. The contract was executed by Ms. Moore and JPS on February 28, 2020.[8]

Second, Ms. Moore sufficiently pled a breach of that contract. An essential term of Ms. Moore's contract was that JPS would employ her from August 5, 2020 to May 27, 2021 as a Licensed Employee. Ms. Moore argues that she was terminated before her contract was set to end in retaliation for filing the October 2020 EEOC charge. "The purpose of the contract was clearly to employ [Moore] . . . for a specific period of time." *Sanders*, 546 F. Supp. 2d at 363. That purpose was breached according to Ms. Moore when JPS terminated her contract

---

[8] The employment contract was re-executed on March 2, 2020. The only substantive change is Ms. Moore's salary designation, which changed from "TS-X- 3A/19" to "TS-X- 3A/20". Docket No. 21-3 at 1-2.

before it was due to end allegedly in retaliation for Ms. Moore's engagement in a protected activity. As explained above, Ms. Moore sufficiently pled a claim for retaliation. For these reasons, Ms. Moore has sufficiently pled a claim for breach of contract in retaliation for engaging in a protected activity under Title VII.

JPS's *Motion to Dismiss* is, therefore, granted in part and denied in part.

**E.  JPS's *Motion for Summary Judgment.***

JPS next argues that Ms. Moore failed to file the instant lawsuit within 90 days of receiving her Notice of Right to Sue letter from the EEOC, therefore this Court should grant summary judgment in its favor. Docket No. 11 at 2. The Court disagrees.

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Gamel v. Grant Prideco, L.P.*, 625 F. App'x 690, 693 (5th Cir. 2015). The Court construes all well-pleaded factual allegations "in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A nonmoving party may not, however, thwart summary judgment with "conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Gamel*, 625 F. App'x at 693.

When a claimant files a charge with the EEOC "the 90-day limitations period begins to run upon receipt by the charging party of unambiguous notice that the EEOC's processes have terminated and that the EEOC has decided not to bring suit." *Whitehead v. Reliance Ins.*,

632 F.2d 452, 459 (5th Cir. 1980). The 90-day limitation period starts to run from the date a

plaintiff receives a right-to-sue letter from the EEOC. *See Gamel*, 625 F. App'x at 694.

"In the absence of a concrete allegation to the contrary, we presume that a claimant

receives an EEOC right-to-sue letter[.]" *Lee v. Columbia/HCA of New Orleans, Inc.*, 611 F. App'x

810, 812 (5th Cir. 2015). In the Fifth Circuit, the exact number of days wherein a claimant is

presumed to have received her Notice of Right to Sue letter is "an open question . . . but [the

Fifth Circuit has] expressed satisfaction with a range between three and seven days" after the

letter is sent via U.S. postal mail. *Morgan v. Potter*, 489 F.3d 195, 196 (5th Cir. 2007).

In its *Motion for Summary Judgment*, JPS argues that the 90-day limitation period began

to run on July 27, 2023, when the EEOC "orally notified the charge was being closed . . . and

. . . sent an email notifying her concluding document(s) were uploaded to the portal for her

access." Docket No. 11 at 3. If true, Ms. Moore had until October 21, 2023 to file her lawsuit.

Ms. Moore indicates that she received a copy of her right-to-sue letter on August 21, 2023 via

U.S. mail, and thus had until at least November 19, 2023 to file her lawsuit. If true, she timely

filed her lawsuit on November 15, 2023. Docket No. 14.

To resolve this dispute, the Court must determine whether Ms. Moore received her

right-to-sue letter the day the EEOC issued the letter via its portal and subsequently sent an

email directing Ms. Moore to the EEOC portal, or whether she received her letter when it

arrived via U.S. mail. The answer to that question turns on whether the EEOC's July 27, 2023

email, in conjunction with the July 27, 2023 predetermination interview, unambiguously

notified Ms. Moore that the EEOC terminated its investigation of her case. It did not.

The EEOC conducted a predetermination interview with Ms. Moore on July 27,

2023—two years after she filed her April 14, 2021 charge. It is a routine practice for the EEOC

to conduct predetermination interviews "with the charging party/ complainant when some or all of the issues are no cause." EEOC Compl. Man. ¶ 954, § 27.4. During the interview, the EEOC will summarize the evidence before it, indicate the proposed finding, and invite the claimant to share additional information she would like the EEOC to consider in its investigation. *Id.* A predetermination interview is precisely what it sounds like—an interview conducted *before* a final decision is made to close a claimant's case.

The July 27, 2023 predetermination interview did not unambiguously notice Ms. Moore that the EEOC terminated its investigation and decided not to bring suit. In fact, the memorandum summarizing the interview only noted a *recommendation* to dismiss the case and issue a Notice of Right to Sue. Docket No. 10-2. Even if the investigator informed Ms. Moore of its recommendation—which, absent a dated transcript of the call, is unclear—a recommendation does not denote a final determination. Indeed, the purpose of the predetermination interview is to gather additional information to assist the EEOC in making a final determination. JPS contends that the investigator "[e]xplained the Right to Sue process to [Ms. Moore] along with the 90 days to timely file her case in court." *Id.* Such an explanation is standard procedure during EEOC predetermination interviews. *Id.* ("In conducting the charging party PDI . . . Inform the party of his/her private rights under the applicable laws[.]"). The predetermination interview, thus, did not inform Ms. Moore that her case was closed and that she had the right to sue.

Similarly, the EEOC's subsequent email, sent a few minutes after the predetermination interview, did not unambiguously notice Ms. Moore that the EEOC terminated its investigation and decided not to bring suit. The email did not state any position on the status of Ms. Moore's case or attach her right-to-sue letter. The email states: "A new

document was added to EEOC Charge No. 423-2021-00389, Bessie Moore v. Jackson Public School District. To view it, sign in to the . . . ." Docket No. 10-3. Because the Notice of Right to Sue letter was not attached to the email, Ms. Moore would not have viewed her right-to-sue even if she did open that email. The Fifth Circuit has not answered whether the 90-day limitation period starts to run the day the EEOC issues a right-to-sue letter via the EEOC portal and subsequently sends an email prompting complainants to download available documents.

The Fifth Circuit does, however, make clear that a plaintiff's 90-day limitation period starts to run from the date a plaintiff *receives* a right-sue *letter* from the EEOC. *See Taylor*, 296 F.3d at 379. It is important that a plaintiff is made aware in writing of her next steps if she desires to pursue those claims that the EEOC has rejected. For example, a complainant is warned that she must file a lawsuit within 90 days. If she files on the ninetieth day or beyond, her claim may be dismissed.  *Gamel*, 625 F. App'x at 694 (*citing Butler v. Orleans Parish Sch. Bd.*, No. CIV. A-00-0845, 2001 WL 1135616, at *2-3 (E.D. La. Sept. 25, 2001)). EEOC uploaded Ms. Moore's Notice of Right to Sue letter to the EEOC portal shortly after the phone call on July 27, 2023. Nevertheless, both Ms. Moore *and* JPS offered evidence that Ms. Moore did not view the right-to-sue letter, and was thus not made aware of her right to sue, until at least August 17, 2023.

JPS attached an EEOC log, which documents all actions taken in Ms. Moore's case. Docket No. 10-3. The log shows the EEOC closed Ms. Moore's case and issued the right-to-sue letter to the EEOC portal on July 27, 2023. It shows that by August 4, 2023, Ms. Moore had not accessed the portal to view the documents therein. The EEOC sent a reminder email to Ms. Moore on August 4, 2024 informing her that there were documents available for

download. The log, which includes entries extending to October 25, 2023, shows that Ms. Moore never accessed the online portal between July 27, 2023 and October 25, 2023.

Ms. Moore contends that she did not receive the July 27, 2023 email from the EEOC. Docket No. 14 at 4. Instead, she attaches a hard-copy letter from the EEOC dated August 17, 2023. Docket No. 14-1. Enclosed with that letter was the Notice of Right to Sue letter, dated July 27, 2023. *Id.* The letter explained that the EEOC "issued the enclosed document" and sent Ms. Moore "an email notification that EEOC had made a decision" regarding her charge and advised her "to download a copy of that decision document from the Portal." *Id.* The letter went on to state: "Our records indicate you have not downloaded that document from the portal." *Id.*

By the EEOC's and Ms. Moore's admissions, she did not receive the right-to-sue letter on July 27, 2023 because she did not access the EEOC portal to download said letter. Docket No. 14 at 4; 14-1. For its part, JPS did attach an EEOC email dated May 10, 2021 which informed Ms. Moore that "EEOC will issue closure documents through EEOC's portal and will no longer routinely issue closure documents to parties by U.S. mail." Docket No. 10-1. Whether the EEOC instructs that the 90-day limitation period starts to run the day it issues a Notice of Right to Sue letter via its portal is unclear. JPS has not provided a User Guide or Compliance Manual to that effect. And the Fifth Circuit has not made a determination to that effect. Perhaps discovery will provide some enlightenment.

Nonetheless, evidence that Ms. Moore did not access the EEOC portal, aggregated with her presentation of the EEOC's August 17, 2023 mailed letter, creates a concrete allegation that she did not receive her right-to-sue letter on July 27, 2023. Whether the 90-day limitation period started to run on August 17 or August 21—the date Ms. Moore claims to

have opened the letter—is of no consequence. The Court presumes the letter was received within three to seven days from the date it was mailed. Thus, even if the Court finds that she received the letter on August 17, 2023, her lawsuit was still timely filed on November 15, 2023.

For these reasons, JPS' *Motion for Summary Judgment* is denied.

**F. Ms. Moore's *Motion to Amend Complaint*.**

Finally, Ms. Moore also filed a *Motion to Amend* her complaint to address the arguments JPS raised in its *Motion to Dismiss*. Docket No. 16. The proposed changes do not make any significant changes to the complaint, itself. On its face, the original complaint and proposed amended complaint allege the same facts and claims. The proposed amended complaint merely appends several new exhibits that further support Ms. Moore's allegations. Because the Court finds the original complaint sufficiently pleads claims of retaliation and breach of contract, it would be redundant and likely cause undue delay to grant Ms. Moore leave to amend. *See Jones v. S. Univ.*, 834 F. A'ppx 919, 922-23 (5th Cir. 2020) (denying *Motion to Amend* where there was no indication that plaintiff did not already plead her best case).

The *Motion* is, therefore, denied.

**IV.   Conclusion**

For the foregoing reasons, Ms. Moore's sex and age discrimination claims are precluded by the doctrine of res judicata and shall not be re-litigated here. Likewise, Ms. Moore's breach of the implied covenant of good faith and fair dealing claim is dismissed for her failure to state a claim. The only claims that shall proceed are Ms. Moore's retaliation, breach of contract, and intentional infliction of emotional distress claims.

**ACCORDINGLY**,

(a)  Dr. Greene's *Motion to Dismiss* is granted;

(b)  JPS's *Motion to Dismiss* is granted in part denied in part;

(c)  JPS's *Motion for Summary Judgment* is denied;

(d)  Ms. Moore's *Motion to Amend Complaint* is denied; and

(e)  Ms. Moore's *Motion to Correct Filing Errors* is granted.

**SO ORDERED**, this the 6th day of August, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE